NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| TYRONE MENTER, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No. 05-cv-5653 (DMC) |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon Plaintiff Tyrone Menter's ("Plaintiff") appeal from the Commissioner of Social Security Administration's ("Commissioner") final decision denying his request for Supplemental Security Income.  The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  The record provides substantial evidence supporting the Commissioner's decision that Plaintiff is not disabled.  Accordingly, the Commissioner's decision is **affirmed**.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for Supplemental Security Income on December 3, 2002, alleging disability due to a learning disability, nervous conditions, polymyositis, and stiffness in his joints.  (R. 54-56, 62.)  The claim was denied initially and again on reconsideration.  (R. 31, 38.)  Plaintiff filed a timely request for a hearing.  (R. 42.)  On December 7, 2004, a hearing was held

before Administrative Law Judge ("ALJ") Michal L. Lissek.  On January 7, 2005, the ALJ issued

a decision and found that Plaintiff is not disabled.  (R. 24.)  The Appeals Council concluded that

there were no grounds for review.  (R. 7-9.)  Thereafter, Plaintiff filed this action challenging the

final decision of the ALJ.

> **B.     Factual Background**

Plaintiff, Tyrone Mentor, is a 37 year-old male born on January 12, 1970.  (R. 28.)  He has

a tenth grade education.  (R. 271.)  Plaintiff's last job as an assembly line worker ended in 2001.  (R.

271.)  The job required Plaintiff to stand and lift metal cabinets weighing 50 to 70 pounds.  (R. 425.)

Plaintiff lost his job due to a decrease in his ability to meet the physical demands of his employment.

(R. 425-426.)

On May 31, 2002, Newark Beth Israel Medical Center admitted Plaintiff, complaining of a

one-month history of weakness, body aches, and dark urine.  (R. 101.)  At that time, Plaintiff was

also experiencing low-grade fever and multiple joint pains.  (R. 101.)  Plaintiff reported recent

elevated liver enzymes with a normal hepatitis profile. (R. 101.)  Lab results from May 31, 2002

revealed significantly elevated liver functioning. (R. 101.)  Plaintiff was thereafter diagnosed with

rhabdomyolysis.  (R. 102.)  Dr. Kowalec examined Plaintiff and noted no peripheral inflammatory

arthritis or suggestive deformity.  (R. 109.)  Plaintiff possessed a 4/5 upper extremity strength,

somewhat decreased grip with both hands, and 3+/5 proximal lower extremity strength.  (R. 109.)

The Medical Center discharged Plaintiff  on June 7, 2002, and prescribed Medrol and Oscal.  (R.

160, 164.)

Progress notes from June 10, 2002, describe Plaintiff as "much improved" with Medrol.  (R.

167.)  A muscle biopsy revealed polymyositis with extensive rhabdomyolysis on June 11, 2002.  (R.

132.)  During an exam on June 13, 2002, Plaintiff stated that he felt much stronger since his discharge from the Medical Center, denied any body aches or cramps, and possessed 4/5 strength in all extremities.  (R. 173.)  Plaintiff was diagnosed with polymyositis, status-post rhabdomyolysis. (R. 173.)

Progress notes from July 2, 2002, show 5/5 strength on examination and an improvement in Plaintiff's polymyositis.  (R. 203.)  Plaintiff denied any complaints of pain or weakness.  (R. 203.) On July 16, 2002, Plaintiff denied headaches, weakness, and any pain in his arms, shoulders, or hands, as he had previously reported.  (R. 205.)  Plaintiff possessed 5/5 strength in his upper extremities and 4+/5 in his lower extremities.  (R. 205.)  Plaintiff displayed a rash on his face, back, chest, and arms.  (R. 205.)

Plaintiff complained of some weakness in his thighs after "walking for awhile" on August 6, 2002, but progress notes show his strength at near normal levels.  (R. 208.) On August 8, 2002, Plaintiff showed 5/5 strength on examination, denied body aches or cramps, and his examiner diagnosed Plaintiff's polymyositis as "asymptomatic."  (R. 212.)  On August 9, 2002, a PFT revealed a mild restrictive defect.  (R. 214.)  Progress notes from August 19, 2002 record the disappearance of the rash, no complaints of pain or weakness, and 5/5 strength in upper and lower extremities.  (R. 213.)

Progress notes show 5/5 strength on September 3, 2002.  (R. 211.)  On September 17, 2002, Plaintiff denied any pain and had intact strength upon examination.  (R. 230.)  Progress notes from October 1, 2002, show clear lungs and intact strength.  (R. 235.)  Progress notes from October 21, 2002, record 5/5 strength in upper and lower extremities despite Plaintiff's complaints of increased weakness of lower extremities.  (R. 242-43.)   Progress notes from November 5 and November 18,

2002, report no complaints and intact strength upon examination.  (R. 253, 262.)  Progress notes from December 23, 2002, show a rash on Plaintiff's back and trace edema in the right lower extremity.  (R. 276-68.)  Plaintiff denied weakness or lower extremity pain.  (R. 276-68.)  Progress notes from February 4, 2003, denote that Plaintiff had persistent muscle activity although his strength was intact.  (R. 305.)  At a subsequent examination on February 18, 2003, Plaintiff reported "feeling okay."  (R. 317.)

Dr. Elias Fernandez performed a consultative examination on February 18, 2003.  (R. 271.)  Plaintiff reported that his primary complaint was polymyositis.  (R. 271.)  He complained of weakness, stiffness in his joints, shortness of breath, persistent fatigue, difficulty standing too long, poor appetite, and headaches.  (R. 271.)  During his examination, Plaintiff stated that he attended special education classes until the tenth grade.  (R. 271.)  Plaintiff alleged that his employment ended because of frequent absences due to weakness and a decrease in his ability to meet the physical demands of the job.  (R. 271.)  Plaintiff also reported depression, which Plaintiff attributed to his current difficulties.  (R. 272.)  On the WAIS-III, Plaintiff achieved a verbal IQ of 77, a performance IQ of 77, and a full scale IQ of 75.  (R. 272.)  Based on these test results, Plaintiff was diagnosed with a learning disorder, NOS, borderline intellectual functioning, and polymyositis.  (R. 273.)

Dr. L. Vassallo performed a consultative examination on February 27, 2003.  (R. 275.)  Plaintiff reported shortness of breath, difficulty standing for long periods, occasional generalized weakness causing an inability to lift, periodic swelling of the ankles and hands, itchy skin, and rashes mainly on his upper back and chest.  (R. 275-76.)  Plaintiff had limited ranges of motion ("ROM") of the cervical spine, but a full ROM of shoulders, elbows, wrists and the lumbar spine.  (R. 276.)

-4-

Plaintiff walked without a limp and possessed 5/5 grip strength in both hands.  (R. 276.)  Plaintiff

had a full ROM of the hips, knees, and ankles.  (R. 276.)  All joints examined were without

deformity and within the normal ROM.  (R. 276.)  No neurological deficits were detected in the

upper and lower extremities.  (R. 276.)  Plaintiff could use both hands for fine and gross

manipulation and did not need any hand-held assistive device for ambulation.  (R. 276.)

In August 2003, Plaintiff suffered from hematuria and was hospitalized.  (R. 344-47.)

Progress notes from September 22, 2003, indicate that Plaintiff's symptoms of hematuria had

resolved.  (R. 408-16.)  In a May 9, 2003 report, Disability Determination Services found that

Plaintiff could perform sedentary work.  (R. 280-88.)  The report stated that Plaintiff could not climb

ladders, ropes, and scaffolds, but could occasionally perform other postural functions.  (R. 280-88.)

An August 21, 2003 Psychiatric Review Technique Form reports that Plaintiff has borderline

intellectual functioning and a history NOS, a non-severe learning disorder.  (R. 288-89.)

Dr. Martin Fechner, a physician, testified as a medical expert at the administrative hearing

on December 7, 2004.  (R. 435-50.)  Dr. Fechner noted the absence of any symptoms of impairment

from Plaintiff's medical record such as difficulty climbing stairs, arising from a chair without use

of the arm, dressing, or combing hair.  (R. 440.)  Without these symptoms, or any approaching a

similar level of severity, Dr. Fechner stated that Plaintiff could not meet or equal Listing 14.05.  (R.

439.)  Dr. Fechner opined that Plaintiff would be restricted to a full range of sedentary work.  (R.

441.)  In addition, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 1, 2002, his alleged onset date.
2. The claimant's polymyositis and learning disability are considered "severe" based on the requirements in the Regulations 20 CFR 416.920(b).  The claimant's learning

disability and borderline intellectual functioning have no more than a minimal effect on his ability to perform basic work activity and are therefore "non-severe" impairments.

3.   These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4.

4.   The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

5.   The claimant has the following residual functional capacity: sedentary work as defined in 20 CFR 416.967 (lift and carry up to 10 pounds occasionally and 5 pounds frequently; stand and/or walk up to 2 hours in an 8 hour day; and sit up to 6 hours in an 8 hour day).

6.   The claimant is unable to perform his past relevant work (20 CFR 416.965).

7.   The claimant is 34 years old, which is considered a "younger individual" (20 CFR 41.963).

8.   The claimant has "a limited education" (20 CFR 416.964).

9.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR 416.968).

10.  The claimant has the residual functional capacity to perform the full range of sedentary work (20 CFR 416.967).

11.  Based on an exertional capacity for sedentary work and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.24.

12.  The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 416.920(g)).

(R. 23.)

## II.   DISCUSSION

### A.   Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., Williams v. Shalala, 507 U.S. 924 (1993). The term "substantial evidence" is defined as "more than a mere scintilla" and "relevant evidence a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Some types of evidence

will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of evidence (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F. 2d 64,70 (3d Cir. 1984)). In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301,303 (6th Cir. 1988)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). According to the Third Circuit, access to the Commissioner's reasoning is essential

to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of HEW, 567 F.2d 258, 259 (4th Cir. 1977)).   "[The reviewing court] need[s] from the ALJ not only an expression of the evidence [he] considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter and cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter, 642 F.2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B.        The Five Step Analysis for Determining Disability

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  Pursuant to the Social Security Act, a claimant is eligible for benefits if he meets the income and resource limitations of 42 U.S.C. §§ 1382a and 1382b, and demonstrates that he is disabled based on an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A person is

disabled only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether the claimant is disabled, a five-step sequential evaluation must be performed pursuant to the Social Security Regulations. 20 C.F.R. § 416.920.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial activity" since the onset of the alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(a)-(c).  Given that the claimant bears the burden of establishing these initial steps, failure to meet this burden automatically ends the court's inquiry.  Bowen v. Yuckert, 482 U.S. 137, 146-7 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies the initial two burdens, the third step in the analysis stipulates that the claimant must then provide evidence that his impairment(s) meets or medically equals an impairment listed in Appendix 1 of the regulations  ("Listing of Impairments").  20 C.F.R. § 416.920(d).  Upon this showing, the claimant is presumed to be disabled and is automatically entitled to disability benefits.  Id.  If the claimant cannot so demonstrate, the disability eligibility analysis requires additional scrutiny.  The fourth step in the analysis centers on whether the claimant's residual functional capacity ("RFC") permits him to resume previous employment.  20 C.F.R. § 416.920(e).  If a claimant is able to return to previous employment, then the claimant is not disabled under the statute and cannot receive disability benefits.  Id.  If the claimant is unable to return to previous employment, the analysis continues onto step five.  At this step, the burden shifts to the

Commissioner to demonstrate that the claimant can perform other work that exists in the national economy, based on the claimant's RFC, age, education, and past work experience.  20 C.F.R. § 416.920(g).  If the Commissioner cannot satisfy this burden, the claimant shall receive disability benefits.  Yuckert, 482 U.S. at 146-47 n.5.

## III.   ANALYSIS

### A.   The ALJ's Evaluation of Symptomalogy

Plaintiff claims that the ALJ failed to give proper weight to Plaintiff's subjective complaints of pain and weakness.  (Pl. Br. at 11.)  Contrary to this contention, the ALJ's decision comports with the weight of the medical evidence.  When a medically determinable impairment exists, an ALJ must consider objective medical evidence in determining whether a disability exists. 20 C.F.R. § 404.1529(c).  Further, if a plaintiff's symptoms suggest a greater restriction than can be demonstrated by objective evidence alone, the ALJ shall give consideration to other factors, including subjective complaints.  20 C.F.R. § 404.1529(c)(3).  However, it is well within the discretion of the ALJ to evaluate a claimant's subjective complaints.  Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995) aff'd, 85 F.3d 11 (3d Cir. 1996) (citing LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988)). "Even in situations where a subjective complaint of pain coincides with a known impairment, it is within the discretion of an ALJ to discount that claim if there is a rational basis to do so."  Id. (quoting Duncan v. Sullivan, 786 F. Supp. 466, 470 (E.D. Pa. 1992)).

Here, the ALJ determined that the objective evidence in the record did not substantiate Plaintiff's claims of pain.  (R. 21.)  Since a plaintiff must put forth more than mere subjective complaints of pain, the ALJ did not err by concluding that Plaintiff's allegations of total disability

lacked credibility. (R. 21.)  At the hearing, Plaintiff testified that he experiences weakness, pain, and fatigue including a general inability to sit or stand for prolonged periods. (R. 427-32.) However, these subjective complaints are at odds with the weight of the medical evidence in the record. Progress notes, with the exception of the initial onset of polymyositis, consistently reveal 5/5 muscle strength in both upper and lower extremities. (R. 203, 211-13, 242-43, 276.)  Dr. Vassallo, a consultative examiner, noted that Plaintiff had a full ROM of the upper and lower extremities with no neurological deficits. (R. 276.)  On August 6, 2002, Plaintiff's examiner diagnosed the polymyositis as "asymptomatic." (R. 212.)  The objective medical record shows Plaintiff's continuous improvement with treatment after the initial onset of symptoms. As such, the Court finds that there exists a rational basis for the ALJ to discount Plaintiff's subjective complaints.

### B.     Step Two: Whether Impairment is Severe

"The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004).  Plaintiff argues that the ALJ erroneously discounted the severity of his learning disability and borderline intellectual functioning. (Pl. Br. at 13.) However, the ALJ evaluated these impairments and found them to be "non-severe" as defined by the Act. (R. 20.) A "non-severe" impairment does not significantly limit the physical or mental ability to do basic work activities. 20 C.F.R. § 416.921, Social Security Ruling 85-28. Basic work activities relate to the ability and aptitudes to do most jobs. 20 C.F.R. § 416.921(b). Examples of these activities relating to mental functions include: understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers, and usual

-11-

work situations; and dealing with changes in a routine work setting.  Id.

At step two of the analysis, Plaintiff bears the burden of introducing sufficient evidence to establish a severe impairment or combination of impairments.  Yuckert, 482 U.S. at 146-47 n.5. Here, Plaintiff did not show how his diagnosis of borderline intellectual functioning and learning disability significantly limit his ability to do any of the above listed basic work activities.  Plaintiff testified that he was laid off as a result of symptoms of polymyositis, not as a result mental impairments. (R. 426.)  "The regulations indicate, in the context of mental retardation, that an ability to hold a job is 'particularly useful in determining the individual's ability or inability to function in a work setting.'"  Williams, 970 F.2d at 1178 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00 (D)).  The state agency physician reviewed the entire record, including the consultative report of Dr. Fernandez, and determined that Plaintiff's borderline intellectual functioning and history of learning disorder were non-severe.  (R. 288 - 311.)   Hence, the ALJ's decision at step two is supported by substantial evidence.

### C.      Step Three: Whether Impairment is Listed in Appendix 1 or Equal to a Listed Impairment

Plaintiff further contends that the ALJ's conclusion at the third step of the sequential evaluation - that Plaintiff does not meet or equal a Listed Impairment - is conclusory and without rationale.  In support of his position, Plaintiff relies on Burnett v. Commissioner of Social Security, wherein the court remanded the ALJ's conclusory step three analysis as being too limited to be susceptible to meaningful judicial review.  (Pl. Br. at 12 (citing 220 F.3d at 126.))  However, "Burnett does not require the ALJ to use particular language or to adhere to a particular format in conducting analysis."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).  In her decision, the ALJ

-12-

clearly states that Plaintiff's polymyositis does not meet or equal Listing 14.05 based on Dr. Fechner's testimony.  (R. 20.)  Citing this testimony, the ALJ noted that no evidence existed of the claimant having trouble rising from his chair, dressing, or combing his hair.  (R. 19, 439.)  The ALJ also noted that the record did not show limb-girdle muscle weakness associated with cervical muscle weakness or impaired swallowing.  (R. 20.)  Without these symptoms, or any approaching a similar level of severity, Plaintiff is unable to meet the Listing according to the testimony of Dr. Fechner. (R. 440.)  As such, there exists substantial evidence for the ALJ to determine that Plaintiff's polymyositis did not medically meet or equal Listing 14.05.

Plaintiff further maintains that his mental impairments, in combination with his physical impairments, meet the level of severity required.  (Pl. Br. at 18-20.)  However, the ALJ conducted a thorough analysis of all of Plaintiff's alleged ailments and objective evidence in the record.  The ALJ considered Plaintiff's learning disability, borderline intellectual functioning, and the insignificant effect of each on Plaintiff's ability to perform work activity.  (R. 20.) After this examination, the ALJ reasonably found these non-exertional impairments to be non-severe.  (R. 20.) After also considering Plaintiff's polymyositis, the ALJ decided to adopt Dr. Fechner's testimony that Plaintiff does not meet or equal Listing 14.05.  (R. 21.)  As such, substantial evidence exists in the record to support the ALJ's finding that Plaintiff does not meet or equal a listed impairment.

**D.     Step Four: Residual Functional Capacity to Perform Past Relevant Work**

Plaintiff argues that the ALJ erred in finding that Plaintiff had the RFC to perform a full range of sedentary work. (Pl. Br. at 19.)  RFC is defined as the most an individual can still do after considering the effects of limitations, both physical and mental, that affect the ability to perform

work-related tasks.  20 C.F.R. 416.945.  At the hearing, Plaintiff testified that he could carry his 35-pound son up the stairs.  (R. 430.)  Dr. Fechner observed this ability as consistent with the capacity to perform sedentary work.  (R. 440.)  Plaintiff's complaints of constant fatigue are inconsistent with progress notes showing full strength in his extremities.  (R. 203, 211-13, 242-3, 276.)  The ALJ specifically cited Dr. Fechner's testimony that Plaintiff could perform a full range of sedentary work, which constitutes substantial evidence in support of the ALJ's RFC finding and is consistent with the medical evidence discussed above. (R. 21, 441.)  See Alexander, 927 F. Supp. at 795.

### E.  The Commissioner Did Not Err in Applying the Medical Vocational Guidelines

Plaintiff contends that the ALJ erred by applying the Medical Vocational Guidelines ("Grids") directly without a vocational expert to assess Plaintiff's non-exertional limitations.  (Pl. Br. at 20-22.)  Plaintiff argues that the ALJ recognized Plaintiff's non-exertional impairments, including his learning disorder and borderline intellectual functioning, yet erroneously concluded that these non-exertional impairments did not have a significant effect on basic work abilities.  (Pl. Br. at 20-22.)

The Grids cannot exclusively establish that there are jobs in the national economy for someone suffering from both severe exertional and non-exertional impairments.  Sykes v. Apfel, 228 F.3d 259 (2d Cir. 2000).  However, when the claimant suffers only from severe exertional impairments, a determination of disability is possible through applying the Grids without reference to additional vocational evidence. Id. at 269.  There is substantial evidence in the record to support the ALJ's application of the Grids and her determination that Plaintiff has no severe non-exertional limitations.  A state agency physician, Dr. Fechner, concluded that Plaintiff could perform the full

range of sedentary work based on his review of the medical record as a whole. (R. 21.) There is no history of non-exertional impairments limiting Plaintiff's work capabilities and the only limitations supported by the evidence are physical limitations. (R. 426.) Thus, the ALJ applied Plaintiff's exertional RFC to perform a full range of sedentary work activity to the appropriate Grid and properly concluded that Plaintiff is not disabled within the meaning of the Social Security Act.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's factual findings and thus **affirms** the Commissioner's final decision denying benefits to Plaintiff.


　　　　　　　　　　　　　　　S/ Dennis M. Cavanaugh
　　　　　　　　　　　　　　　Dennis M. Cavanaugh, U.S.D.J.

Date:　　　　　August   14  , 2007
Orig.:　　　　　Clerk
cc:　　　　　　Counsel of Record
　　　　　　　The Honorable Mark Falk, U.S.M.J.
　　　　　　　File